| | |
|---|---|
| JONATHAN L. DELL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>R. ESPINOZA et al.,<br><br>　　　　Defendants. | **CASE No. 1:16-cv-1769-DAD-MJS (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS AND DEFENDANTS**<br><br>**(ECF No. 1)**<br><br>**FOURTEEN-DAY DEADLINE** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of a magistrate judge. (ECF No. 8.) Defendants Barnett, James, Martinez, and Roque have declined to consent to Magistrate Judge jurisdiction. (ECF No. 25.)

On February 7, 2017, the Court screened Plaintiff's complaint and dismissed claims of medical indifference, use of too tight restraints, threats, and a cover-up against Defendants C. Izahal, CO R.A. Celedon, Captain Jeff Gallagher, Captain Ronald Broomfield, Acting Warden Ronnie Godwin, Warden Dave Davey, RN Arriola, and Paskweitz. This case has proceeded on Plaintiff's remaining claims.

On August 21, 2017, the appearing Defendants filed a motion for summary judgment for failure to exhaust administrative remedies. (ECF No. 36.) The undersigned issued findings and recommendations on December 29, 2017, to grant the motion. (ECF No. 45.) Those findings and recommendations remain pending.

1

I.  **Williams v. King**

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King,  875 F.3d 500 (9th Cir. Nov. 9, 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a case or claims with prejudice during screening even if the Plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendants were not yet served at the time that the Court screened the Complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Because Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in his previous screening order, he will below recommend to the District Judge that the non-cognizable claims be dismissed.

II.  **Findings and Recommendations on Complaint**

A.  **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

## B. Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## C. Plaintiff's Allegations

The events underlying this action occurred while Plaintiff was an inmate housed at California State Prison in Corcoran, California ("CSP-Solano").[1] Plaintiff names the following individuals as Defendants: Correctional Officer ("CO") R. Espinoza, CO R. Roque, Sergeant C. James, CO V. Paskweitz, CO R. Yzaguirre, CO R. Billings, CO C. Izahal, Lieutenant L.A. Martinez, CO R.A. Celedon, Captain Jeff Gallagher, Captain

---

[1] Plaintiff is now housed at Kern Valley State Prison in Delano, California. Compl. at 1.

3

Ronald Broomfield, Acting Warden Ronnie Godwin, Warden Dave Davey, Dr. S. Barnett, and Registered Nurse ("RN") K. Arriola. Each Defendant is sued in his or her individual capacity.

### 1.     Pre-Assault Allegations

On August 22, 2014, Plaintiff was escorted by COs R. Espinoza and R. Roque to Acute Care Hospital ("ACH") at CSP-Solano for suicide evaluation. Plaintiff was placed in a holding cell where, after waiting for more than an hour, he slipped his handcuffs from behind his back to the front of his body. Sgt. James confronted Plaintiff about the repositioning of his handcuffs, and Plaintiff responded that when it was time for him to be escorted, he would move the handcuffs behind his back.

Dr. S. Barnett, a psychologist at ACH, approached Plaintiff and asked him if he wanted to talk. Plaintiff responded angrily, "No, I'm suicidal, homicidal. I tore up my state clothing, flooded my cell, all I wanted to do was hurt myself."

Dr. Barnett turned away and had a private conversation with COs Espinoza and Roque. When the conversation ended, CO Espinoza told Plaintiff that they were going to escort Plaintiff back to his cell. Plaintiff responded, "I'm suicidal I'm not going back."

### 2.     The Assault by COs Espinoza and Roque

CO Espinoza opened the holding cage where Plaintiff was seated and handcuffed with his hands still placed in front of his body. When the door was open, CO Espinoza grabbed Plaintiff and threw him to the floor outside of the holding cage. COs Espinoza and Roque then assaulted Plaintiff, punching and kicking him while Plaintiff remained handcuffed.

During the assault, Plaintiff saw COs Paskweitz and Yzaguirre on each side of CO Espinoza trying to pull him off of Plaintiff. CO Paskweitz said to CO Espinoza, "You need to stop. You're going to get us in trouble." Other staff members arrived and restrained CO Espinoza while Plaintiff was turned over and placed in a prone position. Around this time, Plaintiff began to "verbally disrespect" CO Espinoza for the assault. In

response, CO Espinoza broke away from the officers holding him and assaulted Plaintiff again. Sgt. James witnessed this second assault but failed to respond or stop it.

### 3. Post-Assault Allegations

At some point following the assault, Plaintiff's handcuffs were repositioned behind him by COs Yzaguirre, Paskweitz, and Billings. After a spit mask was placed over his face and leg irons were placed on his ankles very tightly, he was escorted to the entrance of ACH by COs Espinoza and Billings.

During this escort, Plaintiff asked CO Espinoza to not write him up, saying "You and I both know what just occurred … I didn't do shit to you guys." CO Espinoza responded, "I have to write you up, too many people seen what happened. I've gotta cover my ass." Plaintiff complained to the other officers who were present, saying "You guys seen this dude assaulting me, and now y'all go help him lie on me." CO Paskweitz responded, "Fuck you, we didn't see shit. Next time you'll do what you're told."

While waiting outside ACH, an ambulance arrived to return Plaintiff back to his assigned cell. Lt. Martinez also arrived. Plaintiff screamed at Lt. Martinez that he was suicidal and would harm himself again if returned to his cell. Plaintiff also told Lt. Martinez about the assault by COs Espinoza and Roque.

Plaintiff then complained to RN K. Arriola, who was standing nearby, about his injuries and pain following the assault. RN Arriola came towards Plaintiff to look at the injuries but was turned away by Lt. Martinez.

A wheelchair was brought out per Lt. Martinez's request. Plaintiff was placed in it and sheets were used to strap Plaintiff down. Sgt. James told Lt. Martinez that Plaintiff would not be admitted to ACH per Dr. Barnett and that he was to be returned to his housing unit. Lt. Martinez responded, "In his present state he'll be right back here 'ACH-Fac' before the night is over."

Plaintiff was thus placed in the wheelchair with waist chains, leg irons, a spit mask, and a sheet tied extremely tightly around his torso. He was confined in this

wheelchair for hours in the holding tank, but his injuries from the assault were not addressed during this time.

After several hours, Plaintiff was given a medical injury examination, but it was rushed by unidentified escorting staff, who said, "Nothing's wrong with him." Plaintiff did not receive any bandaids or alcohol pads or any other medical attention for his injuries.

Afterwards, Plaintiff was escorted to a temporary crisis bed overflow where he was held for three days. This overflow procedure violated California Department of Corrections and Rehabilitation ("CDCR") procedures. In addition, Plaintiff was not given any medical attention or showers during this three-day period.

Plaintiff seeks damages.

**D.  Discussion**

    **1.  Heck Bar**

It appears from Plaintiff's allegations that he may have been charged with misconduct related to the assault. In the event that he was, Plaintiff is forewarned that some allegations may be subject to dismissal pursuant to Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). In Heck, the Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. The Heck bar preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of incarceration or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. Muhammad v. Close, 540 U.S. 749, 750–751 (2004).

However, "challenges to disciplinary proceedings are barred by Heck only if the § 1983 action would be seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served." Nettles v. Grounds, No. 12-16935, -- F.3d --, 2016 WL 4072465, slip op. at 12 (9th Cir. July 26, 2016) (en banc), citing Muhammad, 540 U.S. at 754-55. "If the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be

served, then the claim falls outside the core of habeas and may be brought in § 1983." Id.; see, e.g., Pratt v. Hedrick, 2015 WL 3880383, *3 (N.D. Cal. June 23, 2015) (§ 1983 challenge to disciplinary conviction not Heck-barred where "the removal of the rule violation report or the restoration of time credits" would not necessarily result in a speedier release for inmate with indeterminate life sentence and no parole date).

Moreover, the Ninth Circuit has found that "a conviction [for resisting arrest] does not bar a [42 U.S.C. § 1983] claim for excessive force under Heck when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" Hooper v. Co. of San Diego, 629 F.3d 1127, 1132 (9th Cir. 2011). Thus, by extension, if a plaintiff alleges a scenario whereby both the defendant acted with excessive force and the prison disciplinary infraction is valid, Heck is inapplicable. See Brown v. Holland, 2014 WL 1339687, at *3 (N.D. Cal. Mar. 28, 2014); William v. Young, 2014 WL 505184, at *4 (E.D. Cal. Jan. 24, 2014) (noting that if a reasonable fact finder could find the plaintiff violated Cal. Code Regs. tit. 15, § 3005 and the defendant had used excessive force, the excessive force finding would not necessarily imply invalidity of the disciplinary conviction, and thus Heck is inapplicable).

### 2. Linkage and Supervisory Liability

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each Defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Plaintiff has named a number of individuals but has asserted no allegations as to them. These individuals include CO C. Izahal, CO R.A. Celedon, Captain Jeff Gallagher, Captain Ronald Broomfield, Acting Warden Ronnie Godwin, and Warden Dave Davey. While Plaintiff has included allegations against Defendants CO Parkweitz, CO Yzaguirre and CO Billings, none of them rise to the level of a constitutional violation.

To the extent Plaintiff seeks to impose liability on the basis of the supervisory role of any of these Defendants, his claims would fail. Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Monell, 436 U.S. at 691. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named Defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Iqbal, 556 U.S. at 676.

Liability may be imposed on supervisory defendants under § 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendants cannot be held liable for being generally deficient in their supervisory duties.

### 3. Eighth Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976).

#### i. Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not ... use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

Plaintiff accuses COs Espinoza and Roque of assaulting him without provocation or the need for safety or security. As a result, Plaintiff suffered pain and injury. These allegations are sufficient to state an Eighth Amendment excessive force claim.

### ii.     Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 832-33 (1994) (quotations omitted). To establish a violation of this duty, the prisoner must show first, that he was incarcerated under conditions posing a substantial risk of serious harm; and second, that a prison official knew of and was deliberately indifferent to this risk. Id. at 834.

Plaintiff accuses Sgt. James of witnessing the second assault by CO Espinoza and failing to intervene. Plaintiff has asserted a viable claim against this Defendant.

### iii.     Medical Indifference

A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer, 511 U.S. at 828.

"To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To establish the objective prong, a plaintiff must show a serious medical need by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges that a delay of medical treatment amounts

deliberate indifference, the prisoner must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Plaintiff's claim of medical indifference may be premised on four separate instances. In the first instance, Plaintiff was escorted to ACH on a suicide watch. There, Dr. Barnett asked if Plaintiff wanted to speak to her. Plaintiff angrily declined and said he was both suicidal and homicidal and that he wanted to hurt himself. "[A] heightened suicide risk can present a serious medical need." Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). Despite knowledge of Plaintiff's mental state, Dr. Barnett denied Plaintiff a crisis bed and directed that he be returned to his cell. These allegations are sufficient to proceed against Dr. Barnett.

In the second instance, Plaintiff complained to RN Arriola about his pain and injuries following the assault by COs Espinoza and Roque. When RN Arriola attempted to examine the injuries, she was prevented from doing so by Lt. Martinez. There is no deliberate indifference on these facts as to RN Arriola since she provided a reasonable response to Plaintiff's complaints. Lt. Martinez, on the other hand, both knew of the attack and Plaintiff's injuries, but purposefully refused to allow RN Arriola to examine or treat Plaintiff. These allegations are sufficient to proceed against this Defendant.

The third instance follows Plaintiff's placement in the holding cell where he was restrained in a wheelchair and held for hours without medical treatment. When Plaintiff was eventually provided a medical examination, this examination was rushed by unspecified officers. Although the delay in treatment and the attempt by officers to rush a medical examination may under certain circumstances constitute deliberate indifference, Plaintiff does not identify any individuals against whom liability may attach and fails to include other allegations that would raise this claim to the level of a constitutional violation. Accordingly, he fails to state a claim.

And lastly, the fourth instance concerns the failure to provide any medical to Plaintiff during his three-day placement in an overflow crisis bed at ACH. Again, Plaintiff's failure to include other allegations and failure to link this conduct to any Defendant renders this claim insufficient.

### iv.  Tight Restraints

"[O]verly tight handcuffing can constitute excessive force." Wall v. Cnty of Orange, 364 F.3 1107, 1112 (9th Cir. 2004) (Fourth Amendment claim). "The Ninth Circuit has held that excessively tight handcuffing can constitute [excessive force], but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." Cf. Dillman v. Tuolumne County, 2013 WL 1907379 at *8 (E.D. Cal. 2013) (citing Wall v. County of Orange, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (arrestee suffered nerve damage as a result of continued restraint in tight handcuffs); LaLonde v. County of Riverside, 204 F.3d 947, 952, 960 (9th Cir. 2000) (arrestee complained to officer who refused to loosen handcuffs); Palmer v. Sanderson, 9 F.3d 1433, 1434-36 (9th Cir. 1993) (arrestee's wrists were discolored and officer ignored his complaint), with Hupp v. City of Walnut Creek, 389 F.Supp.2d 1229, 1233 (N.D. Cal. 2005) (denying summary judgment in the absence of "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); Burchett v. Kiefer, 310 F.3d 937, 945 (6th Cir. 2002) (refusing to find a constitutional violation where officers immediately acted after arrestee complained that handcuffs were too tight.)[2]

---

[2] In Smith v. Yaroborough, 2008 WL 4877464 at *12 n.3 (C.D. Cal. 2008), the Central District also considered the type of injury required in a case alleging excessive force based on overly tight handcuffs. After surveying the case law, the Central District found that, "[i]n general, in cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendants to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by defendant." Id., citing Shaw v. City of Redondo Beach, 2005 WL 6117549, at *7 (C.D. Cal. 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or other forms of abusive conduct in conjunction with the tight handcuffing.")

1          Plaintiff's allegations suggest a claim based on tight leg restraints, which Plaintiff
claims were placed on his ankles "extremely tight." This claim fails because Plaintiff does
not allege that he complained about the tightness or that he suffered pain or injury as a
result of it.

### v. Threats

Insofar as Plaintiff seeks to impose liability on CO Paskweitz for threatening him
with future harm if he didn't do as he was told, this claim fails because threats alone do
not rise to a constitutional violation. See, e.g., Oltarzewski v. Ruggiero, 830 F.2d 136,
139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under §
1983); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (prison guards' threat of bodily
harm failed to state a claim under § 1983). "'[T]he exchange of verbal insults between
inmates and guards is a constant, daily ritual observed in this nation's prisons' of which
'we do not approve,' but which do not violate the Eighth Amendment." Watison v. Carter,
668 F.3d 1108, 1112 (9th Cir. 2012) (quoting Somers v. Thurman, 109 F.3d 614, 622
(9th Cir. 1997) (internal quotation marks omitted)).

### 4. Cover-Up

To the extent that Plaintiff attempts to raise a cover-up claim, it is premature.
Allegations that officials engaged in a cover-up state a constitutional claim only if the
cover-up deprived a plaintiff of his right of access to courts by causing him to fail to
obtain redress for the constitutional violation that was the subject of the cover-up. See
Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (9th Cir. 1988) (cover-up
"allegations may state a federally cognizable claim provided that defendants' actions can
be causally connected to a failure to succeed in the present lawsuit."); Rose v. City of
Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993). A cover-up claim is premature
when, as here, Plaintiff's action seeking redress for the underlying constitutional
violations remains pending. See Karim-Panahi, 839 F.2d at 625 (claim alleging police
cover-up of misconduct was premature when action challenging misconduct was

pending); Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.")

### 5. Violation of Prison Regulations

Finally, Plaintiff claims that his placement in an overflow crisis bed violated CDCR regulations, but a violation of a prison regulation, which is not itself challenged as unconstitutional, does not provide a basis for liability. Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (a "prison regulation [is] primarily designed to guide correctional officials in the administration of a prison" and is "not designed to confer rights on inmates....").

## III. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's claims against Defendants C. Izahal, CO R.A. Celedon, Captain Jeff Gallagher, Captain Ronald Broomfield, Acting Warden Ronnie Godwin, Warden Dave Davey, RN Arriola, and Paskweitz be DISMISSED; and

2. This action proceed on Plaintiff's Eighth Amendment excessive force claims against COs Espinoza and Roque, a failure to protect claim against Sgt. James, and deliberate indifference claims against Dr. Barnett and Lt. Martinez.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: January 9, 2018      /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE